Case No. 21-3044, United States of America v. Dwight Hayman, also known as Pee-Wee, also known as Wee, appellant. Ms. Yang for the appellant, Mr. Goodham for the appellate. Good morning, and may it please the Court. Mr. Hayman was entitled to an appeal, but his trial counsel failed to provide adequate consultation about an appeal in two independent ways. First, he failed to advise Mr. Hayman of the advantages and disadvantages of an appeal. He gave inaccurate advice. He mistakenly claimed the government would treat an appeal as a breach of the plea agreement, but he expressly permitted the ineffective assistance of counsel claim that trial counsel and Mr. Hayman had discussed. He then steered Mr. Hayman to raise his ineffective assistance claim through a collateral 2255 motion, but he failed to explain that by pursuing this lesser remedy, he would lose the right to counsel that he was guaranteed only on direct appeal. Separately, his counsel also neglected to make a reasonable effort to discern Mr. Hayman's wishes regarding appeal. His ministerial instructions about the 14-day deadline were insufficient to satisfy his duty to consult. Either error... What would he have argued on appeal? On appeal, the claim that was preserved was ineffective assistance of counsel, and this... How was counsel ineffective? Because if he had taken the direct appeal, he couldn't base the ineffective assistance claim on the failure to take a direct appeal. That's correct, Your Honor. This court has recognized that the Strickland analysis is a fact-intensive one and that the facts needed to establish ineffective assistance of counsel is not typically part of the district court record. And so upon filing a notice of appeal, Mr. Hayman would be appointed a new attorney who could then help him reassess trial counsel's... Would you argue that the plea deal that the district court thought was so extremely favorable to Mr. Hayman was, in fact, ineffective assistance? Well, what we don't know based on this record is the scope of the investigations that trial counsel did to test the sufficiency of the government's evidence and to test whether there were any defenses that could be raised for Mr. Hayman. And those are precisely the questions that could have been answered on direct appeal had Mr. Hayman had the opportunity to have appointed counsel help him reassess trial counsel's performance. And due to, in recognition of the fact-intensive nature of the Strickland analysis, as well as the fact that the facts needed to establish ineffective assistance of counsel are not typically part of the district court record, it is this court's general practice to remand an ineffective assistance claim that's raised for the first time on direct appeal back to the district court, so long as the record does not conclusively show that the defendant is not entitled to relief. And that is precisely the circumstance here, where the record is insufficient to demonstrate one way or the other. And so Mr. Hayman should not be punished for having lost the opportunity to raise that claim on direct appeal due to the deficient consultation provided by trial counsel. At a bare minimum, the decision whether to appeal was one that belonged solely to Mr. Hayman, and he was deserving of receiving accurate advice. The inaccurate advice that trial counsel gave about a purported disadvantage of appeal, as well as the steering that occurred, that made Mr. Hayman believe that the only viable avenue for him to raise ineffective assistance was through a lesser collateral remedy. When paired together, that constituted deficient consultation due to trial counsel's failure to advise Mr. Hayman adequately of the advantages and disadvantages of an appeal. And separately, his counsel also neglected to make a reasonable effort to discern Mr. Hayman's wishes regarding appeal, and those ministerial instructions about the 14-day deadline were insufficient to satisfy his obligation to consult. Either of those errors constitutes deficient consultation that satisfies the first step of the Strickland analysis. As for the prejudice prong, the district court did not make any factual findings or rulings regarding prejudice, and so remand would be proper in this instance so that the district court could reach those findings in the first instance. If you help me with a theoretical question about how the prejudice prong works in this context, it seems like maybe it not only overlaps with the two ways that you could show that there was a duty to consult, but it may be entirely duplicative of that. So the two ways to show a duty to consult, number one, a rational defendant would have wanted to appeal. Number two, your particular defendant demonstrated that he wanted to appeal, even if he didn't expressly say so. If you can't prove either of those, I'm not sure how you could prove prejudice. Those two avenues are not duplicative of the prejudice prong, and the reason why is for two reasons. As for the test regarding whether a rational defendant would apply, the Supreme Court has explained that even in the absence of non-frivolous grounds for appeal, so long as there is substantial evidence of a reasonable probability that this particular defendant would have appealed. Right. That's the second way to show there's a duty to consult. Yes, Your Honor, and as for the second, the duty prong looks solely at expressions of interest that this particular defendant made to trial counsel, but the prejudice prong could look at any types of actions or expressions made by Mr. Heyman, and not limiting that analysis strictly to the expressions made directly to trial counsel. In this case, that doesn't help you because the kind of one piece of evidence we have about things he said to people other than his trial counsel, I think he told, actually it was to his trial counsel, he said, tell my Maryland lawyer that this case is over. What could he have meant when he said this case is over, other than I'm not going to appeal this case? Trial counsel explained during the evidentiary hearing that the purpose of that statement was to inform the Maryland attorney to continue, the Maryland attorney's purpose was to determine into whose custody Mr. Heyman would go once the sentencing concluded, whether he would go to federal custody or whether he would go to Prince George's County due to a pending Maryland case. And so it was for that strategic reason that he was instructed to inform Maryland attorney that the proceedings had ended. It was not an expression of an interest in concluding the proceedings, but rather a statement informing the Maryland attorney that that decision would now have to be made. What's your best piece of evidence that this particular defendant wanted to appeal, that he was dissatisfied with the 15-year plea deal? What we have here on this record is much more than general dissatisfaction with the plea. Mr. Heyman had many consistent conversations with trial counsel over the proceeding. They discussed his desire for trial counsel to do something more to omit the 924C gun charge. They discussed withdrawing the plea. They discussed raising ineffective assistance. I appreciate that and thought it was well-briefed. If you had to just point to one thing, I'm not saying that one thing has to be dispositive. Obviously, we look at your strongest piece of evidence and your second strongest, and we put them together and we consider them as a whole. But what is your strongest piece of evidence that he wanted to appeal? In addition to those statements, I think the strongest piece of evidence is the fact that he listened to trial counsel's advice and timely filed his ineffective assistance claim through his 2255 motion. What that reflects both is that he was willing to raise ineffective assistance of counsel, and that had he been provided adequate consultation, he would have raised that on appeal. Can we consider that 2255 motion in making this analysis, or do we look at the time that counsel was making the decision whether the client wanted to appeal? We look at the universe of facts then. Is there any case or authority to look at something that postdates by 50 weeks, almost 50 weeks, that critical decision to appeal or not in deciding whether he wanted to appeal? The duty analysis is restricted to what counsel knew at the time that the consultation was provided, but it would be relevant in determining the prejudice prong. And as for that duty to consult, another strong piece in the record is trial counsel's own testimony that raising ineffective assistance of counsel through a collateral remedy is not typically part of the advice and consultation that he gives to all of his clients, but that he did so here because of the particular conversations that he had had with Mr. Hayman. What trial counsel's mistake was. So there the evidence is what counsel was discussing with Mr. Hayman at the relevant time, not the fact that he actually filed one later. But your focus seems to be on the discussions Mr. Hayman was having with Mr. Katzoff, contemporary with the representation, indicating that you thought Mr. Hayman wanted some form of future proceedings, whether it would be 2255. That's right, Your Honor. Those conversations that were happening before the appeal deadline expired reasonably demonstrated to trial counsel an interest in challenging his conviction and sentence. And trial counsel recognized that by raising for Mr. Hayman the avenue of ineffective assistance through that collateral remedy, which he testified was not part of his typical practice. And the duty to consult, the Supreme Court has explained, is expected to exist in the vast majority of cases. And lay defendants are not expected to invoke any precise legal words or legal terms to trigger that duty. And so other courts have held the duty to exist where a defendant raises a simple question, such as what's next after sentencing, or makes a single statement expressing a desire to do something to reduce his sentence. And what we have here in this record are consistent and ongoing expressions of interest by Mr. Hayman to trial counsel that reflected that interest. Can you clarify one thing factually for me? After sentencing, he met with the government. Was that meeting set up before sentencing or after sentence? Was that all a post-sentencing process, or do we know the timeline of that? I'm not entirely sure, Your Honor. I believe that meeting was set up before sentencing to occur post-sentencing. But the content of those conversations demonstrated that Mr. Hayman continued to express a desire to trial counsel to do something more to challenge his conviction and sentence. And during those three encounters, the purpose of it was very much reflective of the consistent and ongoing interest that Mr. Hayman had been expressing to trial counsel before sentencing that continued even after sentencing. The certificate of appeal did not specifically mention the prejudice prong of Strickland. I think that that alone does not preclude us from considering the prejudice prong. Do you agree with me on that? I'm not entirely sure, Your Honor. I know that this court can address questions of law that the district court has not addressed, but that the general practice is to allow the district court to do so in the first instance. And I think that's particularly true here, given that the prejudice prong is a mixed question of fact and law, and any factual findings would be reviewed on clear error. And because the district court did not make any factual findings regarding prejudice, and because the factual findings for prejudice are not coextensive with findings needed for performance, it would be proper to allow the district court to reach those findings and to reach that ruling in the first instance. I thought Judge Walker was asking whether there's any legal barrier. The fact that the certificate of appealability referenced two particular issues. As a matter of law, that doesn't preclude consideration of the prejudice question. You've raised common considerations that we would keep in mind on issues in any appeal, certificate of appealability or not. But the law, I thought, was pretty clear that we were not confined to just the two questions that were mentioned. Because what was certified to us was that he had made a showing of the deprivation of a constitutional right, and so that constitutional question is what's certified. I believe that's right, Your Honor. And it's not jurisdictional anyhow. I do not believe it is jurisdictional. And here, if this court does choose to look at the prejudice prong, there is substantial evidence in the record of reasonable probability that Mr. Hayman would have appealed but for the deficient consultation. In addition to the timely filing of ineffective assistance of counsel, which reflected that he followed trial counsel's advice and would have raised that if he had known it would not reach the plea agreement and that he had a right to counsel on direct appeal. The record also demonstrates diligence on Mr. Hayman's part in pursuing that remedy. He repeatedly attempted to access the law library where he was confined. And after he was restricted access on multiple occasions, he affirmatively reached out to the Federal Public Defender's Office for their assistance in preparing that filing. And so it is the diligence through which he pursued that remedy in addition to the timely filing of that ineffective assistance claim together that collectively demonstrates prejudice here. All right, no further questions. I reserve my time for recall. Thank you, Ms. Yang. Thank you. Court, David Goodham for the United States. If I could, I'd like to address the factual question you asked, Judge Millett, relating to whether the meeting was scheduled before sentencing. I think that is answered at FAA 300. Mr. Katzhoff is describing that the government was willing to have a meeting, and Mr. Katzhoff said he would, quote, schedule it closer to sentencing. And that was a description of a conversation he had with the defendant between the plea hearing and before sentencing. Thank you. With respect to the two pieces of the puzzle here, with the Court's permission, I'd actually like to start with prejudice, if I might. As Strickland counsels, if this Court can easily or more easily resolve an ineffective assistance to counsel claim via prejudice, it is, of course, free to do so. My opponent has suggested… Is there any certificate of appealability barrier to us doing that? I don't think so. As was previously alluded to, I understand that this Court is always concerned about the issue of whether or not it was presented to the district court, and I believe that's this Court's decision in Lockett. But in this case, prejudice was presented to the district court. It is 100% true that he did not rule on it. He decided there was no deficiency. But if you look at the pleadings, the post-hearing pleadings in particular that we cited in our brief, Mr. Hayman first raised the issue of a non-frivolous issue on appeal and related it to prejudice. Then the government answered and said, well, no, he hasn't shown prejudice. So true, district court did not rule on it. But I think that covers the certificate of appealability problem, number one. Number two, and I think this gets to the issue of my opponent's suggestion, there were no findings of fact that are available to support a prejudice finding if this Court wants to embark on that. And what Flores-Ortega says is that, and I'm looking at 528 U.S. at 486, there is overlap between, in the unique circumstance of missing notice of appeal, there is overlap between the prejudice inquiry and the deficiency inquiry. And in particular, there are two factors that the Court looks to when assessing each. One, identification of non-frivolous issues for appeal, number one. And number two, any indication in the record that the defendant himself wanted to appeal. And in that context, this district court did make the relevant findings that I think would support, if this Court wanted to go down that road, the prejudice conclusion. And I would direct the Court to- So the deficient performance inquiry turns on this duty to consult, which in this case, I don't think there were any non-frivolous grounds. So this turns on whether there was an indication that this defendant wanted to appeal. Yes. And the prejudice inquiry, I'm not sure I'll get the precise adjective or adverb, but under Strickland, it's whether there was a reasonable possibility that, in this case, the defendant would have taken the appeal, right? So those seem almost, if not identical, at least parallel. So why would we not just rest on the ground asserted by the district court? Certainly, that's available. We've briefed that fully. We think the record supports the district court's conclusion. Is prejudice easier for you? I'm just curious why you're going first to prejudice. Well, my opponent has suggested the consultation was inadequate, for example, number one. So that gets to the adequacy of the consultation. Presupposing a duty to consult, though. Right. And I was just going to turn to that. What this Court has counseled and what Flores-Ortega counsels is that it is a very rare situation when you don't have a duty to consult. We think in this circumstance, very unique circumstances, we meet that test. There was no duty to consult here for all the reasons we've outlined in our brief. But we recognize that this Court's decision indicated that should be a very rare scenario. So our take on this is that you don't even have to satisfy, you don't even have to be comfortable with the notion that this was one of those very rare circumstances. Instead, you can look at this. But how does that make the case easier for you on prejudice? If you have a high burden to show no duty to consult, and let's assume for the sake of argument the consultation was inadequate. Sure. Wouldn't you have a comparably high burden to show prejudice? No. Why? What Striegeland teaches is that it's the defendant's burden to show a reasonable probability that this would have affected the outcome. And what Flores-Ortega says in particular is a reasonable probability that but for the missing consultation, the inadequate consultation, he would have appealed. And so I guess my point is, is that— Is the burden shifting, which makes the prejudice prong easier? I think so. I think so. We have the Striegeland overlay of burden on the prejudice, then we have the additional—what Flores-Ortega said was a critical factor, a critical showing that you had a—there was a but for circumstance here. So parallel inquiries but shifted burden on prejudice? Yeah. Yeah. And so my only point is that Mr. Heyman got appointed counsel below. He has appointed counsel on appeal. I have yet to see an identification of a non-frivolous issue for appeal. The counsel below tried to make some arguments, and if you look at JA 379-80, the district court dismissed them out of hand, I would suggest. He recognized, although the defendant is not required to identify a meritorious ground for appeal, he said the defendant has, quote, struggled to articulate a viable argument. And I think that's a charitable statement in terms of the identification of a non-frivolous issue. So we have that finding, in fact, I would suggest, number one. Number two, what Flores-Ortega says is this court should consider whether the defendant has, quote, promptly expressed a desire for appeal. And, again, if you look at the court's findings, in fact, at JA 381, the court says, I find that Heyman did not at any time indicate during the period, that is, the 14-day period, that he was interested in appealing. You couple that with the silence, the undisputed silence that unfolded thereafter all the way until 23 days before the expiration of the year period for a 2255, and I would suggest you have a significant factual foundation. It was certainly evidence that he was, you know, he wanted, there is evidence in both directions here. There's evidence that he wanted to do something to get this, at least the mandatory minimum, the 924C, knocked down, that part of it at least. And he met with the government after sentencing, and that did not go as he had hoped. And Mr. Katzoff keeps saying, you know, I don't normally tell him about 2255, but I did in this case because I knew he was unhappy. And so I don't, you know, I think we have to reckon with the fact that there are indications here that Mr. Heyman was unhappy, wanted to do something about this extra time, at least that much from the mandatory minimum, 924C, and that he, that he, that Mr. Katzoff knew, because there would have been no reason for him to keep talking to him about 2255, but not appeal. There was no reason to talk about one, not the other, if you thought this, that Mr. Heyman had no interest in going further, right? I disagree, Your Honor, to the extent that, and I would, I know that my opponent has suggested that the only reason 2255 was on the table and as a discussion matter was because of this dissatisfaction. I don't think that's an accurate reading of the record. This court, of course. Why was he talking, tell me, tell me why you think he was talking about 2255 if he thought Mr. Heyman wasn't interested in any further judicial review? It was part of the plea agreement, Your Honor, and in particular, I would, as I read the record, that 2255 came up two times. Number one, it came up as they were discussing the plea agreement, and, sorry, Your Honor, I'm trying to find my, here we go. And then it came up again as Mr. Heyman was contemplating withdrawing his plea, and at that point, we're at JA 326, 327. It is true, Mr. Katzhoff reminded Mr. Heyman of his, the things that he had not forfeited by his appeal waivers, and he says at 327, at this time, we talked about both 2255 and direct appeal separately, and I wanted to remind him that he had that avenue if he wanted. But he also, the appeal waiver did not cover raising ineffective assistance of counsel on direct appeal either. Sure. But he wasn't telling him about that. Well, again, I think the record demonstrates that every time he talked about these two things, he talked about them together. No, there's the worst, because, in fact, he told him that he was concerned that if you do the appeal, that the government will treat that as a breach of the plea agreement. Now, I assume, on behalf of the government, that you would agree that that was an erroneous reading of the plea agreement to think that he couldn't have done a direct appeal on ineffective assistance of counsel. 100% agree. So that was a completely wrong, erroneous advice that he gave him. To the extent he said that if you're appealing ineffective assistance of counsel, I mean, he was indicating that an appeal could cause the government to withdraw its plea agreement, knowing that there had been one risk of that already. Maybe that would really scare Mr. Heyman. But, in fact, there was zero risk had he appealed on ineffective assistance of counsel. Sure. And, again, I can stand here as a member, as a part of the government, and say, of course, we would not have suggested that a notice of appeal equaled a breach. But what I will say is this. In the context of the circumstances of this case, I would suggest that was not an unreasonable warning on the part of Mr. Katzhoff. And that's for two reasons. Number one, Mr. Katzhoff had just gone through a very, what I would suggest, recent effort to talk to Mr. Heyman about his desire to withdraw his appeal because he thought the substantive validity of the 924C was not supported by the evidence. Mr. Heyman decided not to withdraw his appeal. That was the sort of threshold leading into the sentencing when they had the consultation, number one. Number two, of course, we had the weird circumstance, if you will, that really stuck in Mr. Katzhoff's mind, which was the government threatening to withdraw the plea on the eve of the plea hearing. And my only point is that... You just said that that is just, neither of those is at all relevant to filing a notice of appeal. And then, as counsel would be appointed and the appeal developed, and presumably that counsel would look at the plea agreement. And had they raised ineffective assistance of counsel, I can't imagine what they could have done on sentencing, and that was the other out, because it was within the limits. But had they raised that, there was zero risk. So I don't know why Mr. Katzhoff, I can't imagine what possible reason he had for not being more candid in what he, if he had concerns, to say what they were rather than simply to say, if you appeal unqualifiedly, there could be a withdrawal of the plea agreement. But hey, here's this 2255 thing you can do all by yourself without an attorney. It seemed like he was, this is not you, I don't know why I'm facing with you, but it's that he was really trying to steer him to 2255 and away from an appeal, even though ineffective assistance of counsel can be much more effectively raised on direct appeal, because you get an attorney. Showing in this circuit is pretty, you know, it's a colorable claim. Maybe he wouldn't have even met that, but that's all that you need for your to get a remand to develop a record. And so I don't know why any, I don't know why any well-advised counsel would not have explained that to their client if, as he seemed to understand Mr. Katzhoff, I'm sorry, that Mr. Heyman wanted to do something more. Well, you know, he did no doubt about it, understand that Mr. Heyman wanted to do something more. But Mr. Katzhoff understood that Mr. Heyman was not done, that he wanted to do something more with this. Absolutely. But I think what the record demonstrates is that Mr. Heyman, Mr. Katzhoff understood that Heyman did not want to do something more within the legal system. That is, he understood having just decided not to withdraw his plea. How could he have figured that out? How could he have figured out that all he wanted to do, if all he wanted to do was talk to the government, then he wouldn't talk to him about 2255. Well, again, he knew he wanted to do something more when he wanted to try the government route. But it sounded like Mr. Katzhoff, for good reason, was skeptical that the government was going to look at that discussion the same way Mr. Heyman was hoping it would turn out. I don't think Mr. Katzhoff thought there was much hope. I agree with that. And so he told him about 2255 as well, because he knew Mr. Heyman wanted to do something about it. It seemed to be a focus on the 924C. Maybe it was broader than that, but it seemed to be focused on that. Yeah. Well, you know, again, I mean, it is true. There was a discussion of 2255. It was not as much. There were multiple discussions about 2255. Again, I read the record as demonstrating just twice. It certainly didn't happen at the time of that final consultation. The record is quite clear on that. But he got he got it. He got the government not to have a waiver of 2255 in the plea agreement. Absolutely. That was an upfront one. And then the two discussions. So all along, Mr. Katzhoff is retaining this 2255 right and then talking about this 2250 right, as you said, at least two times. Sure. I think counsel would be remiss if he didn't make sure that his client understood the options that he had, both direct appeal and 2255, because it was part of the plea agreement. I see my time is up. I just get clarity on one thing you said earlier. It sounded like you were saying that the defendant has the burden to show prejudice. Makes sense. But that on the performance prong, the defendant would, I guess, have the burden to show that there was no consultation. But then did you say the government would have the burden to show that there was no duty to consult? No, I think I think I'm sorry if I misspoke. I think the burden rests with the defendant to show both that there was a duty to consult, i.e. that he had somehow or another reasonably indicated that he wanted to appeal or that a rational defendant would have wanted to appeal. And that my only point was that both Flores Ortega and this court has said there will be it will be very rare circumstances when we find no duty consult. OK, I don't burdens always with that. That's my understanding. That's right. And Flores Ortega is simply applying Strickland and Strickland is adamant and very clear about that notion. The burden stays with the defendant. But there's no rare circumstances limitation on the prejudice prong. Right. If the. If the defendant had taken an appeal and argued that the legal theory underlying 924 C count was invalid, that would have been a breach. Yes. I mean, I've certainly never seen a circumstance where the government at that point has swooped in and said you breached the plea agreement. But it's certainly plain language feature of the agreement that I suppose the government could have said, OK, you've now briefed this. Unless you retract that, we will find you and we will have a hearing about whether or not you are in breach. And if we find you're in breach, all bets are off. But any good appellate counsel knows how to deal with that. Right. They say counsel is ineffective for not arguing with Mr. Winstead. Argue whoever has an easy end round. Yes. But. But, you know, and I'll finish with this point, unless the court has any further questions. This gets back to Mr. Katz is a warning about the breach at the time when he's making this, making these decisions and making these these sort of providing this information to the defendant. He had just gone through a lengthy period where Mr. Heyman had said, you know what, I want to withdraw my plea. I don't think that 924 C is supported by the evidence. That's at the forefront of Mr. Mind when he says to him, you know, look, if that's the theory that you want to pursue on appeal, I should warn you this would be a breach. So it wasn't perfectly articulated like that in the hearing testimony. But again, if you go back to the circumstances facing Mr. Katz off at the time, he considered what to say to Mr. Heyman. I think that is a significant overlay. Well, it might be those are like factual questions that need to be resolved. Would need to be resolved were relevant. Sure. Sure. Right. That's one possible reading of it. I overstayed my welcome for sure. Unless the court has any further questions, we would ask you from the district court. Thank you. Very helpful. Thank you. A few points on rebuttal. First, my friend on the other side discussed the appointed counsel's avenues for raising meritorious or non-frivolous grounds for appeal in the 2255 collateral proceeding.  At the time, counsel was appointed for that proceeding. Mr. Heyman was time barred from introducing any new claims and the scope of the evidentiary hearing was limited only to one narrow legal issue, which was whether there had been efficient consultation regarding appeal. And so for all the reasons that were discussed earlier, Mr. Heyman was he was unable to take the opportunity that he was entitled to, to have counsel appointed on direct appeal and reassess trial counsel's performance through that avenue. It sounds like he had, I'm sorry to interrupt, but it sounds like he had at least one other proceeding and maybe some other proceedings ongoing at the same time. We know he had at least a Maryland case going on at the same time as this one. I believe there was a pending Maryland case. Unfortunately, that wasn't wrapped up in the as part of the plea bargain. No, I don't believe so. Sometimes that happens, even if it's a state and federal prosecutions, but it wasn't done here by counsel. Maybe it couldn't have. I don't, I have no idea. I'm just. Thank you. I don't believe so, Your Honor, but I'm not entirely sure. The second point I want to make is about my friend on either side had argued that trial counsel's raising of 2255 through the ineffective assistance avenue was invoked here only because it was already part of the plea agreement. But if we look to JA 293, trial counsel's own testimony indicates that he raised the possibility of ineffective assistance through 2255 because of the particular facts and conversations that he had had with Mr. Hayman a number of times. And so that reflects his knowledge that Mr. Hayman wanted to do something more, which is also something that the government has recognized. And the duty to consult as the government has acknowledged is something that exists in the vast majority of cases and will not exist in only very rare circumstances. And here, given that Mr. Katzoff knew Mr. Hayman wanted to do something more, the distinction between those post-sentencing conversations being in a judicial avenue or a non-judicial avenue is irrelevant given that Mr. Hayman was a lay defendant who was not distinguishing for himself whether he was pursuing a judicial remedy or a non-judicial remedy. He was simply expressing to trial counsel that desire to do something more, and that triggered the duty to consult. And finally, the government has agreed that the information that trial counsel provided was misleading and inaccurate. There was zero risk to Mr. Hayman to file a notice of appeal given the appeal waiver that was in this case. And ineffective assistance would have been much more effectively raised on direct appeal precisely because of the right to counsel that was afforded in that avenue. And lastly, although there can be overlap in facts between the prejudice prong and the performance prong, they are not coextensive. And the burden to demonstrate a reasonable probability is something that is less than the preponderance of the evidence. And here it is established in the record not only the timely 2255 filing that indicates Mr. Hayman followed trial counsel's advice in raising ineffective assistance of counsel and did so timely, but that he also did so diligently. His attempts to access the law library as well as his affirmative reach out to the Federal Public Defender's Office demonstrates his diligence in that regard. Suppose he had raised ineffective assistance on direct review and won. What would happen at that point? Would it not just invalidate the plea agreement and he'd be right back to facing trial with a life sentence? Yes, Your Honor. It would place him back to the position he was in before that plea was entered. And so with new attorney he could renegotiate a plea or he could choose to go to trial. And the passage of time has given us a glimpse into the sufficiency of the government's evidence on the lead defendant. So the downside risk point that he could have ended up much worse off by continuing to litigate would apply regardless of whether he took an appeal directly barred by the plea agreement like the substantive validity of the 924C charge or the permitted ineffective assistance appeal, either of which would have just undone the plea agreement. I guess, is the question whether breaching the plea would have equivalent consequences to withdrawing the plea from a second appeal? Suppose he appeals, if he appealed, he took an ineffective assistance appeal, it's not a breach of the plea agreement, but the consequence of his winning that case is not that he gets to go free, it's that the plea agreement is set aside and he's back facing lifetime in prison. That's true, Your Honor. But what we don't know based on this record is whether trial counsel engaged in reasonable investigations to test the sufficiency of the government's evidence and whether there were any defenses that Mr. Hayman could have raised on those charges. And the passage of time has given us a glimpse into the sufficiency of the government's evidence. The lead defendant in this purported conspiracy, who the government characterized as existing above Mr. Hayman, was acquitted at trial. And what that demonstrates is all that we do not know about the evidence and about trial counsel's investigations before advising Mr. Hayman to take the plea. Well, it also sounds like they might not have 924C on the next go-around. That's also true, Your Honor. We simply don't know what investigations trial counsel made into the sufficiency of that charge. The government relies heavily on the statement of facts that Mr. Hayman agreed to as part of the plea agreement to justify that conviction. But if the plea is set aside, he would not be held to the facts that he agreed to in the plea, and it would be the government's burden to establish that conviction beyond a reasonable doubt. If there are no other further questions, we ask that this court reverse and remand with instructions to determine prejudice or in the alternative, to reverse and remand with instructions to grant. Thank you. Ms. Yang, you and Ms. Hashimoto were appointed by this court to represent Mr. Hayman in this case, and the court thanks you for your very able assistance. With that, the case is submitted.
judges: Millett, Katsas, Walker